## HEMINGWAY *vs.* HEMINGWAY AND OTHERS.

A testator, by his will, having devised an estate in fee simple, in land, to his son J, added the following clause : " My will is, and I hereby appoint B, H and M, as trustees, to take into their care all the property that I have, in this my last will, given to my son J, and do further say and ordain, that the said J may be allowed the improvement, by their consent; but the property must not be disposed of, without that it is absolutely necessary for his comfort, and then, not without the consent of the above named agents." Held, that such clause invested the appointees therein named, with the power of overseeing and advising J, in regard to the improvement of the estate devised to him, and prevented an alienation of the same, by him, in his lifetime; but, that it neither conferred upon them any legal or equitable interest therein, nor did it alter or vary the character or quantity of said estate, and consequently, that J had a devisable interest in said land.

Hemingway *v.* Hemingway and others.

Where J subsequently made his will, as follows: "All my estate, both real and personal, to me belonging, and which I shall die possessed of, after the payment of my personal charges, and the expenses of settling my estate, I give and bequeath to my two nephews I and H;" it was held, that the word "possessed," as used by the testator, denoted ownership, and not merely personal and corporal occupation; and consequently, that such portion of the land devised to J as aforesaid, by his father, as was retained until his death, and the proceeds of such part thereof as had been sold, under a resolution of the general assembly, on condition that the avails should be invested in other real estate, to be conveyed to J on the same terms, limitations, and restrictions as the estate so sold, passed, by such will, to the devisees of J.

WILLIAM HEMINGWAY, one of the heirs at law of John Hemingway, deceased, appealed to the superior court, for New Haven county, from the following orders and decrees, passed on the 14th day of March, 1853, by the court of probate, for the district of New Haven, viz.: a decree accepting the administration account, with said estate, of Merrit Hemingway, the executor of the last will and testament of said deceased; an order to distribute and set out dower to the widow of said deceased; and an order to distribute said estate among the devisees and legatees of said deceased, according to law and the provisions of said will. The appellant assigned, for reasons of appeal, that certain real estate, and six hundred and ninety dollars in cash, were inventoried as the property of said deceased, to be administered on by said executor, and to which said orders had reference, and were intended to apply; that said testator did not die possessed of said property, or any part thereof; and the same never was, at any time, nor was any part thereof, during the lifetime of the testator, in the possession, or under the control of the said John Hemingway, the testator; but the same and every part thereof was, at the time of the death of said testator, and, at the time of making of said order, and long before the making of said will, had been, and ever since has been, up to the death of said testator, in the possession and under the control of said Merrit Hemingway,

as trustee thereof, for the benefit of said testator, during his, the said testator's life; and the only interest that said testator ever had therein, was as the *cestui que trust* thereof, during his life; the same having been previously deeded in trust, as aforesaid, by the father of the testator and of the appellant, of whom the appellant is the heir-at-law, as well as the heir-at-law of said testator; that, by allowing said executor's account, and the passing of said orders, the appellant's title to said real and personal estate was endangered and put in jeopardy.

The cause came to the term of said superior court, holden in April, 1853, when the court found the following facts :

On the 24th day of February, 1826, John Hemingway, senior, father of the deceased, made his last will and testament, which was subsequently duly proved and approved by the court of probate; by which, after providing for the payment of his debts, and making sundry bequests and devises, he devised the real estate in question to the said John Hemingway, deceased, in the following manner :

" I do give and bequeath to my son John Hemingway and unto his heirs and assigns forever, three pieces of land on the lower rock quarter, which contains about ten and a half acres, more or less, $150; also about thirty-five and a half acres of land lying in North Guilford, near James Bishop's, $500; also about five and a half acres, called the Plant Pasture, $300; also about two acres on the Great Hill, so called, Taintor Land, $50, estimated at $1000. The above property I have set to John, on account of money I gave to Merrit Hemingway, when he went into trade.

" I do give and bequeath to my beloved sons Merrit and John Hemingway, in equal portions, the residue and remainder of my estate, both real and personal, as I have not heretofore disposed of in my last will, on condition that they, the said Merrit and John, pay the legacies which I have in my last will given to my wife and daughter, viz., one legacy to my wife of $200, and one to my daughter Harriet of

$402.41, and one to my daughter Mariah of $569.11, and one to my daughter Orilla of $525; my will is, that the property which I have in this my last will given to my sons Merrit and John in equal proportion, shall be holden for each and every one of the legacies before mentioned in this my last will.

" My will is, and I do hereby appoint my father-in-law, Josiah Bradley, of East Haven, and Alfred Holt, of Hartford, and my son Merrit Hemingway, as trustees, to take into their care all the property that I have in this my last will given to my son John Hemingway, and do further say and ordain, that the said John may be allowed the improvement, by their consent; but the property must not be disposed of without that it is absolutely necessary for his comfort, and then, not without the consent of the above named agents."

The aforesaid $600 cash, was the proceeds of a certain mill, which was a part of the aforesaid real estate, sold by said Merrit, in the year 1842, under the authority of the general assembly, which passed a resolve, authorizing such sale, " on condition that said Merrit should invest the avails thereof in other real estate, to be conveyed to said John, upon the same terms, limitations, and restrictions, as said John now holds said mill."

Before the distribution of the estate of the said John Hemingway, senior, two of the trustees, named in said will, died, and never acted under the will; and the said Merrit Hemingway, acting under his appointment, by said will, upon the settlement of said estate, took possession and charge of the estate, so devised to the said John Hemingway, Jr., for his use and benefit, accounting to him for the rents and profits, and so continued, until the year 1848, when the said John Hemingway, Jr., having married, went into the use and possession of said premises, by the permission and sufferance of the said Merrit Hemingway, and continued to use and improve them as his own, renting the same, and

receiving the rents therefor, until his death, which was in January, 1852. The said $600 cash, from the time said Merrit Hemingway received the same, from the sale of said mill, as aforesaid, remained in his possession ; said Merrit accounting for the interest thereof, annually, to said John Hemingway, Jr., and holding said money under said will, and the said resolve of the general assembly.

On the 10th of April, 1843, said John Hemingway, Jr., made his last will and testament, in due form of law, (which, after his decease, was duly proved and approved by the court of probate,) as follows, viz. :

" All my estate, both real and personal to me belonging, and which I shall die possessed of, after the payment of my funeral charges, and the expenses of settling my estate, of every name and nature, I give and bequeath to my two nephews, the sons of my brother Merrit Hemingway, viz., John Hemingway and Homer Hemingway, to be equally divided between them, to them, their heirs and assigns forever, and I do hereby revoke all former wills which I may have heretofore made, and I do hereby appoint my brother Merrit Hemingway, executor of this my last will and testament."

Said John Hemingway, Jr., was a seafaring man, and, previous to the year 1848, was frequently away from home, at sea, and was forty-seven years old at the time of his death ; and, at the time he made his said will, he had no other property than that which came to him, under and by virtue of his father's will.

The appellant is the brother of said John Hemingway, Jr., of the whole blood ; the said Merrit Hemingway is his half brother, and is also father of the devisees, named in the will of said John Hemingway, Jr.

Upon the facts aforesaid, the question, as to what judgment should be rendered in the premises, was reserved for the consideration and advice of this court.

*R. I. Ingersoll* and *Blackman,* for the appellant, con-

tended, 1. That no particular form of words is necessary, to create a trust; but the court will look to the intent, and so construe the instrument, as to carry that intent into effect. *Donalds* v. *Plumb*, 8 Conn. R., 447.   *Chamberlain* v. *Thompson*, 10 Conn. R., 244.   2 Sw. Dig., 108, 109.

The son John had not the power to dispose of the property, either by deed or devise,—for his father's will directs, that "the property must not be *disposed of*, without that it is absolutely necessary for his comfort, and then not without the consent of the above named agents."   It was manifestly, the intent of John Hemingway, senior, that his son John was to have no control over the property,—no possession in his own right,—and no power to dispose of it, in any way. It can not be, that the father, thus limiting the life use, would confide to the judgment of one, deemed by him unsuitable to have even the improvement, unless by the permission of the trustees, the entire disposition of the same property, by devise.

2. That if John Hemingway, the younger, had the power to dispose of this property, by devise, he has not done so. The language of his will is, " All my estate, both real and personal, to me belonging, *and which I shall die possessed of.*"   He never was possessed of any of the property in question, in his own right.   He had not even the occupancy of the land, at the time the will was made, and for several years thereafter; and though he occupied it at the time of his death, yet it was in right of the surviving trustee, and only by "permission and sufferance."   The language of his will is satified, by applying it to the then future acquisitions which he might own and possess, at the time of his death.

3. That, even if the language should be construed so as to include the land which he thus occupied, it can not comprehend the $600 in cash—the avails of the mill sold, which never was in his possession, nor in any way under his control, either when the mill was made, or at the time of his

death.    That sum, by an act of the general assembly, was in Merrit's hands, as trustee, for a specific purpose.

4. That no part of the real estate could be set out as dower.    The statute is explicit, in confining the right to dower to "the real estate, of which her husband *died possessed, in his own right.*"

*C. A. Ingersoll* and *Buel,* for the appellees, contended, 1. That John Hemingway, senior, gave his son John, an absolute estate, in fee, in all the property devised to him, subject only to the charge and control of trustees, during his life. *Hungerford* v. *Anderson,* 4 Day R., 368.    1 Sw. Dig., 146.

It is apparent, from the language of the will of John Hemingway, senior, that no title was ever intended to be vested in trustees, and that their appointment was intended merely to secure the property, during his son's life, for his comfort and support, and not to prevent his disposing of it, at his death, when the object of the trust had been answered. No objection to this clause has ever been made by the trustee, but it is assented to, by him.

2. That the will of John Hemingway, Jr., conveyed the property devised to him by his father, John Hemingway, senior.    The words, "all my estate,"—"to me belonging,"—"of every name and nature,"—and the provisions for payment of funeral charges and expenses, and of settling his estate, showed, that he contemplated and intended a full disposition of *all that he owned.*    The words, "which I shall die possessed of," do not qualify this intention, or indicate to the contrary; for, in connection with the whole instrument, they are equivalent to the expression, "which I shall die the owner of."

3. That it is found, that, at the time this will was made, John Hemingway, Jr., had no estate, except that which came to him by his father's will.    He, therefore, must have intended to devise that, or the will is an absurdity.

4. That the same accuracy of description is not required

in wills, as in deeds, and where words are used, which in
their strict, technical sense, are applicable only to a species
of property which the testator has not, they shall be appli-
cable to some other species of property he has, in order to
effectuate his intention. 1 Sw. Dig., 137, 138. 4 Eng. L.
& Eq. R., 84, 90. 9 E. L. & E. R., 196. 2 Wash. C. C.
R., 475. 1 Jarman on Wills, 353, 360, note.

5. That John Hemingway, Jr., was in the actual posses-
sion of the property in question, at the time of making the
will, and died in the possession of it, except the $600 ; and
of that he had the constructive possession.

STORRS, J.   Two questions are presented in this case : 1.
Whether John Hemingway, second, by the true construc-
tion of the will of his father, acquired a devisable interest
in the land therein devised to him ; 2. If he did, whether,
by his own will, he devised that part of it which was not
sold, by order of the legislature, and also the avails of the
other part.

1. The first of these questions depends entirely on the
import and effect of the terms of the two devises to him, in
his father's will, since the construction of that instrument is
not affected, by any extrinsic facts.   His father gives, in the
first of these devises, certain lands to the said John, in sev-
eralty, and, in the second, certain other lands, to him and
his brother jointly.   There is no doubt that, independent of
the restrictive provision which is added to these devises,
they convey a fee simple in those lands, to the said John.
We are, therefore, brought to examine that provision, with
a view of determining how far it changes or modifies them.
By it, the testator appoints three persons, therein named,
designating them " as trustees," to take into their care, all
the property given in his will, to his said son, and then de-
clares, that he may be allowed the improvement, by the con-
sent of those persons ; but that the property must not be
disposed of, without it is absolutely necessary for his com-

fort, and then, not without the consent of said persons, terming them " the above named agents." The appellant claims, that the estate in fee simple, which would, by the devises to John, if unrestricted by this provision, pass to him, is so abridged or changed by it, that his interest in the land ceased at his death, and therefore, that there was no estate then left in him, which he could devise ; for, that the effect of that provision is, to create an estate for his life, either in him, or in the appointees thus named, and a remainder in fee to his heirs, or a trust in those appointees, for his use, during his life, and afterwards for the use of his heirs. In our opinion, however, neither the character nor quantity of the estate given, by those devises, was at all altered, by that provision ; nor, judging from its terms, was such the intention of the testator.

The claim, that a trust is created in these appointees, implies necessarily, that they are invested with the legal estate. But there is no devise to them, of such an estate ; and therefore, if it exists, it might be inferred, as a matter of intention, from the nature of the powers conferred by the provision in question, on them, in connection with the restriction imposed on the said John. It provides, first, that they may take into their care, all the property devised to him, and that he may be allowed to improve it, by their consent. We think that the meaning of this provision is, that these appointees are to be invested with the power of overseeing the said John, in regard to the improvement of the property, and of advising, and perhaps of directing him, as to the manner in which it shall be used ; and that, if, in their judgment, it would be proper, they might permit him to improve it, without their advice or direction. No argument is necessary, to show that such an authority, given to these persons, neither makes it necessary, nor implies, that they should have the legal title to the property. It neither creates a trust, nor an office or agency of that nature. Nor does it invest those persons with any interest or estate in the property, legal or equitable. *Treat* v. *Peck*, 5 Conn. R.,

280. Their care and supervision over it is to be exercised, on his account, and for his benefit; and he is legally and directly entitled to the avails arising from its improvement. Nor do we think that his possession of the property would be divested or disturbed, by the exercise of the authority of these supervisors. Their appointment, for such a purpose, is more in the nature of an ordinary charge or agency confided to them by the testator, and for which they seem to have been selected by him, in consideration of their relationship and friendship to him and his son, for the protection of the latter, against imposition or unskillful management, than of a trust, as that term is applied to real estate, where the legal title is in one person, and the beneficial ownership in another. It is not necessary to determine, whether it would be competent for John to disregard the advice or directions of those persons, thus selected to oversee him, or whether they would have a remedy, if he should do so; but if they would, it would be furnished on quite another ground than that they had any estate in the land, legal or equitable. See *Shaw* v. *Lawless,* 5 Cl. & F., 129. The expression, moreover, that they are to "take into their care, all the property that I have, in this my last will, given to my son John," confirms the preceding devise to him, of the legal estate, and imports, that he is to continue to hold such estate, and that it is his estate, which they are to take care of. Nor does the designation of these persons, "as trustees," in this provision, constitute them such, if the powers and duties imposed on them fall short of investing them with that character. But that term was used, in a loose and vague sense, as is evident, from the circumstance, that afterward, in the same sentence, they are termed "agents," which, indeed, much more nearly describes their true character. The last branch of the provision in question, prohibits the disposition of the property, unless it is absolutely necessary for the comfort of John, and said appointees shall consent thereto. By this clause, no power is given to them to dispose of it, but only the power of pre-

venting the disposition of it, by withholding their consent to it, and it is clear, that the alienation of it, when made, is to be by John, and not by these persons. This is most plainly implied, from the requirement of their consent to the alienation, which would be senseless, or at least foolish, if they were to be the persons to aliene it. It is also equally clear, that the alienation here contemplated, and to which this restriction applies, is one to be made, during the life of John, because it is to be one which shall be necessary for his personal comfort. Such an alienation could be made only by deed, and not by devise. Hence this restriction only prevents an alienation, under the particular circumstances mentioned, by John, in his lifetime, by deed; and to that extent only, detracts from the full power which ensues, and is incident to the ownership of property in fee. Nothing, therefore, in this clause strengthens the claim of the appellant, that any estate or interest was intended to be vested in these appointees, or that the estate of John was to cease at his death. The result is, that the interest in the land which was devised to him, by this will, being an estate in fee, was devisable by him.

2. We think that, by the true construction of the devise, in the will of John Hemingway second, it embraced all the property of which he died the owner, and that the word "possessed," was used in it, to denote ownership, and not merely personal or corporal occupation. Therefore, the portion of the property devised to him by his father, and which he retained, until his death, and also the avails belonging to him, in the hands of his brother, of that part of it which was sold, under the resolution of the legislature, passed by his will to his devisees.

We therefore advise the superior court, to affirm the decree from which this appeal is taken.

In this opinion, the other judges concurred.

Decree affirmed.