M. A. PAYNE, plaintiff in error, *vs.* EGBERT B. ROSSER, administrator, *et al.*, defendants in error.

1. A testator in 1852 devised an estate for life to his wife, and at her death, in *fee simple*, to his daughter, Mary, then living, and her issue if any. But if Mary should be deceased at her mother's death, without children, or afterwards die leaving no children, then, and in either of those events, the property was to go to and be equally divided between the children of Thomas and Jane M., deceased, the children of W. D. G., deceased, and the children of N. A. G., who is now living. W. D. G. left three children, Sarah now living, John, who died in 1858, without wife or child, Thomas, who died in 1860, childless, but leaving a widow now living. The widow of testator died in 1865; his daughter Mary died in 1872, without a child. The parents of the executory devisees were the niece and nephews of testator:

*Held*, that John and Thomas took contingent interests as executory de-
visees, which were transmissible to their heirs.

2. That such interests did not descend to and vest in those who were
their respective heirs *at the time of their decease*, but to such as an-
swered the character of heirs to them respectively, *when the estate in*
Mary *was determined in* 1872, and the executory devise fell into pos
session.

3. The children of Thomas and Jane M., of W. D. G., J. A. G. and
N. A. G., took *per capita*.

Administrators and executors.   Estates.   Remainders.   Ex-
ecutory devise.   Wills.   Distribution.   Before Judge HALL.
Rockdale Superior Court.   October Term, 1874.

This case is sufficiently reported in the above head-notes.

L. J. WINN, for plaintiff in error.

CLARK & PACE; DOUGLAS & TURNER; L. H. FEATHER-
STON, for defendants.

TRIPPE, Judge.

1. The question was not raised whether, under the terms
of the will, these great nephews and nieces of testator took
at all—that is, whether or not the limitation over to them was
void.   All parties concede that they did take, and the question
made was did they take an interest that was transmissible to
their heirs, where one of them, as did Thomas, died in 1860,
several years before the death of Mary, when the executory
devise fell into possession: See the construction given to this
will in 18 *Georgia*, 545; also see 16 *Ibid.*, 545, and 30 *Ibid.*,
976.   Under those decisions, John and Thomas took a con-
tingent interest as executory devisees.   They did not take a
vested remainder, for Mary held a fee subject to be determined
upon her dying without children then living.   Was that in-
terest transmissible to the heirs of John and Thomas?   Sec-
tion 2266 of the Code provides that if the remainderman
dies before the time arrives for possessing his estate in remain-
der, his heirs are entitled to a contingent remainder interest

when the contingency is not as to the person, but as to the event. This was but a statutory affirmance of the law as it was then recognized: 1 Fearne on Rem., 364. The same author, speaking of the transmission of such interests, pages 553, 554, says this is a property which belongs to contingent remainders in common with executory devises. See, also, 2 Fearne, 434, 435, and cases cited in both volumes; also, 7 Cranch, 456, hereinafter quoted. We have no doubt that the interest which John and Thomas took under the will descended to their heirs.

2. But such interests did not descend to and vest in those who were their respective heirs at the time of their decease. They descended to those who answered to the character of heirs, to them respectively, when the estate in Mary was determined in 1872, and the executory devise fell into possession. This is in accordance with a rule to be found as far back as 3 Reports, 42; Co. Lit. 11*b*, 14*a*, 15*a*. That rule is, that a person who claims a fee simple by descent from one who was first purchaser of the reversion or remainder expectant on a freehold estate, must make himself heir to such person *at the time when* that *reversion or remainder falls into possession*. This was so recognized in Goodright *vs.* Searle, 3 Wils., 29; and in Andrew *vs.* Hutton, 3 Bos. & P., 643. And it was so held by the supreme court of the United States in Barnitz *vs.* Carey, 7 Cranch, 456: See 15 East., 174, and the observations of Mr. Fearne upon this rule in his work on remainders, 561.

3. We affirm the judgment of the court below upon the point that these executory devisees took *per capita*. They were all equally of kin to the testator, to-wit: the children of his niece and nephews, and the gift is to them directly provided the contingency happened upon which they took at all. In 1 Roper on Legacies, 161, it is said, that the taking *per stirpes* always presupposes an irregularity of relationship: See 2 P. Wms., 383; 3 Bro. C. C., 367. The same authority, 1 Roper, 157, gives great weight to the terms " equally divided," when used in a will, for ascertaining the intent of the tes-

tator as to whether the objects of his bounty are to receive it *per capita* or *per stirpes*. It is therein said that if the testator's next of kin are a brother and the children of a deceased brother, and thus not related to him in equal degree, yet if he has shown an intention that they shall take his property in equal shares, that is *per capita,* the distribution by the statute will be superseded. This may occur when the bequest is to "relations," "next of kin," etc., to be equally divided among them, or by expressions of the like import. In the will under consideration, there was the direction for an equal division between certain devisees, who were equally related to the testator, and no indication that it was his intention for them to take as classes, which very probably would give to them individually unequal shares in the estate. The ruling of the court below is affirmed upon this point, and reversed on the first, wherein it was held that the heir of Thomas took no interest. It may be proper to add that the property in contest is all real estate.

Judgment reversed.