COLLINS *v.* SMITH.

A deed executed in 1844 conveying land to a trustee for the use and benefit of a married woman for her life, and declaring that at her death the same should vest in the children born of her body, but that in the event of her death "without any children so born of her body as aforesaid, or that her child or children may all die intestate and without issue" after her death, "then the said premises to be sold, and one half of the net amount of sale to vest in and be the property of [R.C.], his heirs and assigns, and the other half to revert to and

become the property of [the grantor], his heirs ·and assigns, thence-forth and forever," conveyed to R.C. a contingent interest subject to testamentary disposition by him.

Argued June 25,— Decided October 3, 1898.

Equitable petition. Before Judge Ross. Bibb superior court. February 12, 1897.

*Hill, Harris & Birch, Dessau, Bartlett & Ellis, M. R. Freeman and Pope S. Hill,* for plaintiffs in error.

*Anderson, Anderson & Grace* and *Guerry & Hall,* contra.

FISH, J. By deed dated. in 1844, James Smith conveyed a certain house and lot in the city of Macon to Robert A. Smith, as trustee for Eliza C. Collins, the daughter of the grantor, upon the following terms : "To the separate use and benefit of her, the said Eliza C. Collins, for and during her natural life, and at her death to vest in the children born of her natural body, and to them and their heirs forever ; but in the event of the death of the said Eliza C. Collins without any children so born of her body as aforesaid, or that her child or children may all die intestate and without issue after the death of said Eliza, then [the described realty] to be sold, and one half of the net amount of sale to vest in and be the property of the said Robert Collins [husband of Eliza], his heirs and assigns, and the other half to revert to ·and become the property of said James Smith, his heirs· and assigns, thenceforth and forever." At the date of the conveyance there was one child of Eliza Collins living, Juliet by name. Another, a daughter, Mary, was afterwards born. ·Robert Collins died testate in 1861. By his will he directed that his estate and property of every kind and description should be· equally divided between his wife, Eliza, and his daughters, Juliet and Mary. Both daughters died intestate and without issue, Mary in 1870 and Juliet in 1873. Eliza Collins died testate in 1889, without children surviving her. By her will she gave all of her estate to her nephew, B. C. Smith, defendant in error, whom she made her executor. In 1876 the heirs of ·James Smith, the grantor in the trust deed, relinquished or quit-claimed their interest in the reversion under the deed to Eliza Collins. B. C. Smith claims this half-interest under the will·

of Eliza Collins, and as to such reversion there is no controversy. B. C. Smith, upon the death of Eliza, went into possession of the house and lot described in the trust deed, and has since kept possession. The heirs at law of Robert Collins at the time of the death of Eliza Collins were his sister Harriet A. Gunn, his nephew Oscar Collins, and various nephews and nieces, who are the plaintiffs in error. They claimed that under the terms of the deed executed by James Smith they were entitled to one half of the net amount of the sale of the property in dispute, and demanded its sale and a division as the deed, provided. B. C. Smith, being in possession, filed his equitable petition, both as executor and individually, asking for direction as executor; for a determination of the controversy between himself, individually, and the plaintiffs in error, as to such property; and the removal of the cloud upon his title growing out of the claim of plaintiffs in error. The case was, by consent, tried by Judge Ross without the intervention of a jury, and the facts above stated appeared in evidence. The court decreed that the plaintiffs in error had no title or interest in the property in dispute, and that their claims be disallowed and removed as a cloud upon the title of defendant in error, and that the title of the property as to each and all the plaintiffs in error and heirs at law of Robert Collins was in the defendant in error, in fee simple. Plaintiffs in error excepted.

The precise question for determination is, did Robert Collins at the time of his death have, under the terms of the deed, such right or interest in the proceeds of the property directed in the deed to be converted, as he could dispose of by will? If he did, then it passed by his will to his wife, Eliza, and his two daughters, Juliet and Mary; and the interest of the daughters having gone by inheritance to their mother, Eliza, the whole went to B. C. Smith under the will of Eliza, and the decree of the court below was correct. If, on the other hand, Robert Collins did not have at the time of his death a right or interest in such proceeds which he could dispose of by will, then the plaintiffs in error, who were his heirs at law at the time the contingency occurred when the conversion and division were to be made, took by inheritance from him whatever interest or estate he may have

acquired under the deed, and in such event the court erred in its decree. Both theories were forcibly presented to us by the able counsel of the respective parties, and we have very carefully considered all the authorities cited, as well as such others as were at our command; and finally we have no difficulty in deciding that, under the terms of the deed, Robert Collins took not merely a naked possibility, but an interest in the nature of a contingent remainder, the contingency depending upon the event and not upon the person; and that his interest was subject to testamentary disposition.

It was held in *Morse* v. *Proper,* 82 *Ga.* 13, that a contingent remainder in fee in realty, where the contingency is not as to the person, but as to the event, is devisable. The material facts in that case are quite similar to those in the case at bar, except that the testamentary disposition of the contingent interest was made after the code, and the deed under which the testator claimed such interest made no provision for sale of the realty and distribution of the proceeds. Under the provisions of the deed in the case at bar, there was no contingency as to the person who should take half the net proceeds of the sale of the property in the event of the death of Eliza Collins without children surviving, or that her children should all die intestate and without issue. The deed stated with certainty that upon the happening of such contingencies half of the proceeds should vest in and become the property of Robert Collins, his heirs and assigns. The direction that upon the occurrence of such contingencies the realty be sold and division of the proceeds be made as before stated, converted the realty into personalty when the contingencies happened, but did not change the estate or the quantity of interest which Robert Collins took under the deed. *De-Vaughn* v. *McLeroy,* 82 *Ga.* 687; *Legwin* v. *McRee,* 79 *Ga.* 430; *Foster* v. *McGinnis,* 4 *Ga.* 377. In 1 Jarman on Wills, *49, it is said: "An executory interest in real or personal estate is disposable by will, if the nature of the contingency on which it is dependent be such that the interest does not cease with the life of the testator; in other words if it be descendible or transmissible." Chancellor Kent (4 Kent, Com. *261) says: "It is settled, that all contingent estates of inheritance,

as well as springing and executory uses and possibilities, ·coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable and assignable." See citations in note c, Gould's (14th) edition. Dr. Minor (2 Minor's Inst. 416) says: "A contingent remainder of inheritance is transmissible by descent to the heirs of the person to whom it is limited, if such person chance to die before the contingency happens, supposing the existence of the remainderman not to enter into and make part of the contingency itself, upon which the remainder is intended to take effect. And whereas a contingent remainder is descendible, it is at common law devisable by will." To the same effect, see 20 Am. & Eng. Enc. L. 968 and 969, and citations in notes 1 and 4.

Counsel for plaintiffs in error earnestly contend that by the ·early common law contingent remainders in realty were not ·devisable, and that a different rule was not established by the decisions of the courts in England until after May 14, 1776, the date from which the common law was adopted in Georgia by the act of 1784; that contingent interests in personalty were not devisable in England until the act of Parliament of 1837 (7 William IV. and 1 Vict. c. 26, §3); and that prior to the ·adoption of the code in 1863, contingent remainders in neither realty nor personalty were devisable, under the law then in force in this State. If this be so, then as the deed made by ·James Smith was executed in 1844 and Robert Collins died in 1861, the latter did not have, under the terms of the deed, such ·an interest in the property therein described as could pass by his will. We do not think the authorities sustain counsel in their ·contention, and we are of opinion that contingent remainders 'both in realty and personalty, where the contingency was as to .the event and not as to the person, passed by will under the law ·of Georgia as it existed prior to the adoption of the code. In ·Gardner v. Sheldon (1670), Vaughan's C. P. Rep. 259, it was 'held that executory devises were devisable. To the same effect is Wind v. Jekyl (1719), 1 P. Williams, 572. In King v. ˉWithers (1735), 2 P. Williams, 414, a case directly in point, it was held by the lord chancellor and affirmed by the lords, that ·a contingent devise of personal estate was not a possibility only,

34

but was an interest vested and transmissible. This ruling was approvingly cited in Gurnel *v.* Wood (1741), Trin., 14 Geo. 2, C. B., where Willes, C. J., said: "The question is whether an executory devise is transmissible. Most of the old cases which hold that they are not devisable were before executory devises were well established; but that doctrine is now exploded. Executory devises are not naked possibilities, but are in the nature of contingent remainders, and there is no doubt but that such estates are transmissible, and *consequently devisable.*" Selwin *v.* Selwin (1760), 1 W. Blackst. 222 and 251, is generally cited for the doctrine that contingent estates or interests in land passed by will previous to their vesting. This case was stated out of chancery for the opinion of the court of king's bench, and it was contended that the testator had only a future executory use at the time of making his will, not a present use; for the statute could not draw the estate to the use till the possibility (that is, the completion of the recovery) had actually happened; and that this future executory use was not devisable. 6 Cruise R. Prop. *27. The court of king's bench certified its opinion that the lands passed by the will. In the subsequent case of Roe d. Noden *v.* Griffiths (1766), 1 W. Blackst. 606, Lord Mansfield, C. J., observed that if the practice when the court of king's bench certified into chancery had permitted him to give his reasons, he was prepared in the case of Selwin *v.* Selwin, supra, to have shown, with the concurrence of all his brethren, that all contingent, springing and executory uses, where the person who was to take was certain, so that the same might be descendible, were devisable; "descendible" and "devisable" being convertible terms. In Moor *v.* Hawkins (1765), 2 Eden, 342, another case well in point, James Grubb devised all his real and *personal* estate in trust for his son James; and if he should die without issue, under age, then all his lands, tenements, hereditaments and premises should go to Cochram, his heirs and assigns. Cochram devised all his lands and tenements whatsoever that he should die seized and possessed of, in possession, reversion or remainder, and *bequeathed all his personal estate,* to the plaintiff, Moor. Cochram died in the lifetime of James Grubb, the son, who after-

wards died under age and without issue.   Moor, the devisee of
Cochram, brought his bill in which he claimed the freehold,.
leasehold, chattel and *personal estate unadministered of the tes-*
*tator James Grubb.*   The question was whether the possibility
in the realty and *personalty* given by James Grubb, the father,
in his will to Cochram, was devisable and bequeathable by Coch-
ram to Moor.   Lord Chancellor Northington said:   "I never
had a doubt, since I was twenty-five years old, that these con-
tingent remainders are devisable, notwithstanding some old au-
thorities to the contrary.   In the case of Selwin *v.* Selwin,.
however, I sent the question into the court of king's bench for
the satisfaction of the parties; and the certificate of the judges.
in that case implied, I think, that they agreed with me in my
opinion."   Upon which the solicitor-general and Mr. Skynner,
for the defendant, declined any further argument.   The chan-
cellor added:   "This argument is very properly withdrawn, as
the point is settled and ought not to be shaken.   It is a liberal
and right determination.   Declare the real and *personal* estate
of the said testator, James Grubb, passed by his said will to the
said Nicholas Cochram, etc., and *that the real and personal es-*
*tate of the said Nicholas Cochram, therein being compre-*
*hended the real and personal estate of the said James Grubb,*
*passed by his said will to the plaintiff, Thomas Moor."*   In
Perry *v.* Jones, C. P. (1788), 1 H. Blackst. 30, one of the
points for discussion was whether, if the interest of Joseph,
one of the devisees under the will being considered, was contin-
gent, it was devisable.   Lord Loughborough said the discussion
of the question was unnecessary, "for, taking it to be a spring-
ing, contingent, executory use in Joseph, we are all of opinion
that it was devisable, and passed by his will.   The case of Sel-
win *v.* Selwin has determined this point, and we think ourselves
bound by that determination, confirmed as it is by the case of
Moor *v.* Hawkins," etc.   Upon writ of error this decision of
the court of common pleas was affirmed by the court of king's
bench (1879; 3 T. R. 88); the judges basing their opinions
upon the construction of the statute of wills (1540, amended
1542-3), and the decisions in King *v.* Withers, Gurnel *v.* Wood,.
Moor *v.* Hawkins and Selwin *v.* Selwin, referred to above.

See 6 Cruise, Real Prop. *27. Blackstone (1765) says: "Contingencies and mere possibilities, though they may be released, or devised by will, or may pass to the heirs or executor, yet can not (it hath been said) be assigned to a stranger, unless coupled with some present interest." 2 Bl. Com. *290 (Chitty's ed.), citing Shep. Touch. 238, 239, 322, and Marks *v.* Marks (1719), 1 Strange, 132. Mr. Fearne says, that before the statute of wills, contingent interests of chattel or personal interests were allowed to pass by testamentary disposition, though inheritable interests were not. 1 Fearne, Rem. 368. As to the English act of 1837, one of its prominent purposes seems to have been to enlarge the rule laid down in the decisions, and to extend the power to devise contingent interests, both in realty and personalty, "whether the testator may or may not be ascertained as the person or one of the persons in whom the same . . may become vested," etc. The right of testamentary disposition of executory interests has never been so far extended in this State, but is still restricted to instances where the limitation is as to the event and not as to the person. Section 3080 of the Civil Code, to the effect that any estate may be created in personalty that can be created in realty, and that the rules of construction as to both shall be the same, and section 3101, which provides that, "if the remainderman dies before the time arrives for possessing his estate in remainder, his heirs are entitled to a vested remainder interest, and to a contingent remainder interest when the contingency is not as to the person, but as to the event," are but mere codifications of the old law. It was so stated as to the latter section in *Payne* v. *Rosser, 53 Ga.* 662. There an executory devisee died prior to the code, and before the happening of the contingency upon which his interest was limited to take effect, and it was held that his contingent interest was descendible, not, of course, to those who were his heirs at the time of his death, but to such persons as sustained that relation to him at the time the executory devise fell into possession; this being in accordance with the old rule that a person who claims a fee simple by descent from one who was first purchaser of the reversion or remainder expectant on a freehold estate, must make himself heir to such person at the time when that reversion or

remainder falls into possession. The record shows that the executory devise in this case was in both realty and personalty; that the will directed all the property to be equally divided among the executory devisees; that all the personalty was destroyed, and that the fund which it was decreed descended to the heirs of the devisees was the proceeds of the realty sold by an administrator de bonis non, etc., under an order of the ordinary for distribution. Under the rule laid down, plaintiffs in error in the case at bar would have taken by descent the interest of Robert Collins in the property in controversy if he had not disposed of it by will or otherwise. They were his heirs at law when the executory interest which he took under the deed fell into possession, but such interest had passed under his will to his wife and daughters, under whom defendant in error claims it.

If the executory devise in *Payne* v. *Rosser* was descendible, why was it not devisable? When the contingencies occurred upon which the executory interests of James Smith and Robert Collins were to vest, such interests had united in the defendant in error, and he had the right, at his election, to take the realty itself, rather than the proceeds of its sale. *DeVaughn* v. *McLeroy*, 82 *Ga.* 687. The cases of Young v. Harkleroad, 166 Ill. 318, and Elwin *v.* Elwin, 8 Ves. Jr. 547, strongly relied upon by counsel for plaintiffs in error, are not in conflict with our ruling, for they are simply to the effect that where there is a limitation over to the heirs of an executory devisee upon his death prior to the happening of the contingency upon which the devise is to vest, pending such contingency the devisee has no interest in the devise which he can dispose of by will; and if he dies before the contingency occurs, then the persons who may be his heirs at the time of the vesting of the executory devise take as purchasers. Nor do we think, upon careful examination, that any of the other authorities cited by counsel for plaintiff in error are adverse to the conclusion which we have reached; but as this discussion has been sufficiently extended, we will not comment upon them.

*Judgment affirmed. All the Justices concurring.*