RICHARD D. FISHER *vs.* MABEL WAGNER ET AL.

*Devise and Legacy—Contingent Remainder May Be Devised When Limited to Designated Person—Construction of Residuary Clause.*

When a contingent remainder after a life estate is limited to a person who is definitely described, it may be devised by him, although he dies before the happening of the contingency which is to vest the estate in him.

When a testator disposes by a residuary clause of "all the rest and residue of my estate, real, personal and mixed of which I may die possessed," and there is no apparent intention on his part to die intestate as to any property which he could bequeath, then a contingent remainder limited to him after an existing life estate passes under the residuary clause.

A testator devised property to be held in trust for his daughter Aminta during her life, with remainder to her children, and in case she should die without leaving a child or descendants, he gave one-third part thereof to his son Robert, his heirs, personal representatives and assigns, absolutely. Robert died in 1881, leaving a will disposing of all of his estate. The daughter Aminta died in 1908 without issue. *Held,* that the contingent remainder given to Robert in the event of the death of Aminta without leaving issue, passed under his will and that his legatees are entitled to the same to the exclusion of his next of kin.

*Decided January 13th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*Randolph Barton* and *James M. Ambler,* for the appellant.

*Joseph Packard,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

Richard D. Fisher, in his own right, as executor of Robert A. Fisher and as administrator of the estate of Samuel W. Fisher filed a petition asking the Court to ascertain and declare the true meaning and effect of the will of Robert A. Fisher, and to guide and direct him in the administration and distribtion of the fund referred to in the petition. The questions for our determination arise in this way: James I. Fisher, by his will, dated November 13th, 1866, and admitted to probate August 14th, 1877, directed that, after setting aside his wife's dower and thirds, the residue of his estate should be divided equally among his four children, Robert A., Richard D., Aminta E., who afterwards married Charles Green, and Mary M. Wagner, but provided that the shares of his two daughters should be held *in trust* for them for life, with remainder to their children. Mrs. Wagner died several years ago, leaving four children who are of age and are parties to this proceeding, and Mrs. Green died on the 16th day of March, 1908, without leaving issue.

The portion of the will of James I. Fisher material to this case is as follows: "But in case my said daughter, Aminta E., shall depart this life without leaving a child or children, or descendant or descendants of a child of hers, living at the time of her death, or in case she should leave a child or children, or descendant or descendants thereof, living at her decease, and such child or children and descendant or descendants shall all subsequently depart this life under twenty-one

years of age and without issue living at the time of his, her
or their respective deaths, then in trust that the said last men-
tioned one-fourth part or share of the said rest, residue and
remainder of my estate and property aforesaid shall be dis-
posed of in manner following:   One equal third part thereof
shall go to and I do hereby give, devise and bequeath the
same to my son, Robert A. Fisher, above named, his heirs,
executors, administrators and assigns, absolutely and for-
ever," etc.

Robert A. Fisher, after leaving to his wife, Emily P.
Fisher, all the household furniture and plate of which he
might die possessed, disposed of his estate by will dated Feb-
urary 3rd, 1877, as will be hereafter shown.   He died on the
4th day of Feburary, 1881, without leaving children, and his
wife, whom he married in 1871, died in 1893.   When he
made his will he was forty-four years of age, had some prop-
erty in his own right and his father, who was then nearly
eighty years of age possessed an estate of about half a million
dollars.   His wife was ten years his junior and to use the
language of the petition, "although the only issue of their
marriage so far had been an infant, whose premature birth,
in April, 1873, cut short its chance of life, he and his wife
were both in good health and still in the prime of life, and
there was no reason to anticipate that they would have no
other children for whom to make provision in his will."
James I Fisher, his father, died on July 30th, 1877, and
Robert A. served with Richard D. and their mother as one of
the executors of and trustees under James I. Fisher's will,
and was familiar with its provisions, including that creating
the trust for the benefit of Aminta E. Green.   The only child
of Mrs. Green, which was born in December, 1871, died on
March 28th, 1878, having never shown any promise of health
or strength.   At the time of its death, Mrs. Green had been
married nearly nine years, was in the forty-third year of her
age, while her husband was then seventy years old, and the
petition alleges that Robert A. Fisher therefore knew for some
time before his own death that "one-third of the remainder

after his said sister's life estate under her father's will was for all practical purposes sure to come ultimately to him or his representatives." The Safe Deposit and Trust Company of Baltimore was substituted as trustee in place of Mr. Richard D. Fisher, and now has a fund in hand ready for distribution.

The appellees contend: (1) That the interest in the contingent remainder created by the will of James I. Fisher, above quoted, which would have been taken by Robert A. Fisher, if he had survived the happening of the contingency, could not pass by any will made by him; and (2) That if it could, the language used by him in his will was not adequate to transmit this interest. If the views of the appellants are correct, the fund will go to the children of Richard D. Fisher, while if those of the appellees prevail, one-half will go to him and the other half to the children of Mrs. Wagner. The latter are the appellees—the Court below having determined by its decree: "That no interest in the contingent remainder limited in the will of James I. Fisher upon the death of Aminta E. Green, passed under the will of Robert A. Fisher, and that he died intestate threeof, and the same vested in the next of kin of said Robert A. Fisher living at the death of said Aminta E. Green."

The answer of the appellees admits the facts alleged in the petition, but the inferences sought to be drawn from those alleged in paragraphs four and five and the argument based thereon they leave to the judgment of the Court. It is proper to say that the proceeding is entirely friendly and the respective parties seem to be wholly free from those feelings which so often exist, and are sometimes made manifest by the record, in cases involving controversies over estates, although the arguments of counsel were exceptionally able, and the rights of the parties under the law fully and thoroughly presented according to their respective contentions.

As there was no appeal from the decree of August 3rd, 1908, declaring that Stanley K. Green has not "by virtue of being the adopted son of Aminta E. Green, any right, title

or interest as one of the next of kin or heirs at law of Robert A. Fisher, brother of the said Aminta E. Green, in or to any part of the property now held" by the trustees, we are not called upon to pass on that, but would add that as the Act of 1892, which provided for the adoption of children in Maryland and giving such adopted children certain rights, was passed some years after the death of James I. Fisher, there would seem to be no doubt that Stanley K. Green was correctly adviised, as he in effect stated in his answer, that he was not entitled to any interest in the fund in controversy.

1. As Mrs. Green died without leaving any issue, if Robert A. Fisher had survived her, he would undoubtedly have taken a share in the remainder left Mrs. Green, under the clause of his father's will above quoted, but the question is whether he had such an estate, right or interest in that share as he could dispose of by will. The contingency attached to his taking it did not in any way relate to his capacity to take, and there was no contingency as to who was to take, but Robert A. Fisher was distinctly named as the one. The learned counsel for the appellees argued that the distinction made by some authorities between the case of a person designated to take a remainder upon the happening of a future contingency and that of persons who belong to a class which is to take in the same event is highly artificial. Such distinction, however, has not only been recognized in this State, but it seems to us to be a logical one. If a testator names a *person* who is to take upon the happening of a contingency, it is altogether different from naming a *class* of persons who are to take. If, for example, he names A. as the object of his bounty, on the happening of a certain contingency, it is known who is to so take, but if he leaves his estate, upon the happening of a contingency, to the survivor of B., C. and D., or to such of the children of A. as may then be living, it cannot be said in advance who will take, if the contingency happens.

It does not seem to be altogether logical to say that Robert A. Fisher had no interest because he died before the happen-

ing of the contingency, but that his heirs or next of kin, *as such,* can take. Independent of statute, if a legatee or devisee named in a will dies before the testator, his heirs or next of kin would not take, and the devise or the legacy would lapse, because he did not live until the time when such devise or legacy would be effective, and so it would seem to be logical that if he took nothing because he died before the contingency happened, that the heirs or next of kin ought not to take. In 1 *Roper on Legacies,* ch. 10, sec. 4, page 596, after stating that if the substituted legatee dies before the contingency happens, upon which he is to succeed to a legacy, his representative will be entitled to it so soon as the event takes place, it is said: "Suppose, then, a bequest be made to A., but if A. died under twenty-one, or without leaving issue or children, to B., although B. happened to die before A., B.'s personal representative would be entitled to receive the legacy upon the happening of the contingency, *on the ground of its being vested in right in B.* previously to his decease," and there are many other authorities to the same effect.

But as the counsel for the respective parties differ as to the construction of some of the decisions of this Court, and as there may be some apparent, although not, in our judgment, real, conflict between some of those decisions, it will be well to review them at some length. In *Snively* v. *Beavans,* 1 Md. 208, the will gave to Mrs. Watkins certain lands for her life, and at her death to go to two sons. In the event of the sons' death without issue before their mother, she was to have the power of disposing of all she took under the will, and it provided: "I will and devise, in the event of the death of my sons, Thomas and Edgar, before they are twenty-one years of age, that my brother, Greenbury M. Watkins, shall have their whole estate, by paying to my wife Ellen one thousand dollars." It was said by the Court: "It is well settled, that an executory interest of this kind is transmissible, and will go to the representative of the legatee, if he dies before the contingency happens. 2 *Fearne on Rem.* 529. It is a contingent interest which vests in right, though not in posses-

sion." Again it was there said: "If Greenbury M. Watkins had died before the sons, his contingent interest in their estate would have passed to his representatives, to be enjoyed if the contingency happened."

In *Hambleton* v. *Darrington*, 36 Md. 434, Mrs. Watson devised and bequeathed all the residue of her estate to Zachariah Woollen, in trust, to pay to her mother, sister and brothers certain annuities, and the residue of her income to her son Henry for life, and upon certain contingencies (among others, his living after his sister ceased to be single, or leaving issue) she devised to him, his heirs, executors and administrators, absolutely, not only the income but also the entire principal of the rest, residue and remainder of her estate, with this proviso: "But in case of the decease of my son Henry before my said sister ceases to be single, or if my two brothers above named, or either of them, survives him, then in case my said son shall not have issue or descendants, I give, devise and bequeath to my said friend, Zachariah Woollen, his heirs, executors, administrators and assigns absolutely, not only the income of my estate, above intended for my said son, but also the entire principal of said rest, residue and remainder of my estate." Zachariah Woollen died before Henry Watson, but after he (Woollen) had made a will. This Court held that he took a descendible and devisable estate, and in the opinion made the following quotations: " 'All estates which are transmissible, either by operation of law or by act of owner, are held devisable. This, it has been long held, extends to a possibility, if it is not a mere naked expectancy, but be coupled with an interest.' *Redfield on Wills*, part 1, pp. 388, 389; *Fearne on Con. Rem.* 371. 'All contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, *where the person to take is certain*, are transmissible by descent, and are devisable.' 4 *Kent's Com.* 261. 'Where the testator bequeaths his personal estate to A., and if he shall die without issue to B., there is such a vested interest in B., if he survive the testator, that although he should die in the lifetime of A., the

estate will pass under a devise from him, or will go to his personal representatives, in the event of A. dying without issue.' *Barnes* v. *Allen,* 1 Browne C. C. 181; *Perry* v. *Woods,* 3 Ves. 204, 208; 2*Redfield on Wills,* p. 627, Sec. 51." That case is exactly in point, and unless overruled, which we will consider later, is the law of this State.

In *Buck* v. *Lantz,* 49 Md. 439, there was a deed of trust, which conveyed real and personal property to a trustee, in trust, for the use of the grantor during her life and after her death for the use of her daughter, Margaret Buck, during her life and after her death, then in trust as to the remainder for such child or children of the daughter as she might leave, but if the daughter died without leaving descendants surviving her, then in trust to convey the remainder to Mary Harwood, a sister of the grantor. The sister survived the grantor, but died before the daughter, who afterwards died unmarried and without issue, having made a will by which she devised and bequeathed all the property to which she might be entitled at the time of her death to her aunt. It was held that the limitation over of the remainder to the sister of the grantor, after the death of the daughter, without leaving descendants surviving her, was a contingent remainder, which passed upon the death of the sister to her heirs, in whom it became vested upon the happening of the contingency.

It is contended by the appellees that this is one of the cases which overruled *Hambleton* v. *Darrington, supra,* but we do not so understand it. It is true the Court said: "If Mary Harwood had outlived Margaret Buck, the younger, there is no doubt that the contingent remainder, thus limited, would have become an absolute estate vested in her, immediately upon Margaret's death without issue living at that time. But Mary Harwood having died during the lifetime of the tenant for life, so that the estate could not vest in her, it is contended that her heirs have no title to the estate." But the Court went on to quote from 4 *Kent's Com.* 262, that "Contingent and executory, as well as vested interests, pass to the real and personal representatives according to the nature of the inter-

est, and entitle the representatives to them, when the contingency happens;" and again from *Barnitz Lessee* v. *Casey,* 7 Cranch, 469, that: "It is very clear that contingent remainders and executory devises at common law are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens." It was not necessary in that case to determine whether they were devisable, for Mary Harwood had made no will, but the Court did not say, or intimate, that such estates as are transmissible are not devisable, as had been held in *Hambleton* v. *Darrington.* Our testamentary laws provide that any lands, etc., which can be conveyed, or descend to or devolve upon heirs, or other representatives, and all personal property which might pass by deed, etc., can be disposed of by will, and hence it might be argued from them that an estate which is transmisible is devisable.

In discussing the question who were the heirs of Mary Harwood entitled to the estate, the Court said: "It is clear that those only can take who were *in esse* at the time *when the contingency happened* and the estate fell into possession. That did not occur until after the death of Margaret Buck. She could not, therefore, be heir, or take or transmit any interest in the estate by will or otherwise." But that does not reach the question in this case. The rule is, that only the heirs of the contingent remainderman who are *in esse* when the contingency happens and the estate falls into possession can take, and as Margaret Buck was not then *in esse,* she was not an heir, and, of course, she could not take, or transmit any interest in the estate by will or otherwise, but that does not affect the other rule that an estate which is transmissible is devisable. That clearly means devisable by the designated remainderman, and it does not mean that it is devisable after the contingency happens, for then it is no longer a remainder, but has become the absolute property of the remainderman— unless, of course, there be some other provision in the instrument creating it which may affect it. JUDGE GRASON delivered the opinion in *Buck* v. *Lantz,* and sat in *Hambleton* v.

*Darrington,* and JUDGES BARTOL, MILLER and ALVEY sat in both cases. Surely, if they had intended to overrule *Hambleton* v. *Darrington,* they would have said so.

In *Demill* v. *Reid,* 71 Md. 175, the testator devised real estate to his son in trust, for the use and benefit of his grandson for life, and from and after the decease of the grandson, then in trust for the child or children of the grandson if he left any, but if he died without leaving a descendant, or if he left descendants who subsequently died under lawful age and without issue, then to the children of the testator's son. The Court held that the will "created a contingent remainder, with a double aspect, and not an executory devise," and "where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take."

The testator died in 1860, the grandson died in 1866, without leaving issue, and the son had died in 1887. The son had six children three of whom were living at the time the case was heard, one died in 1875, intestate and leaving no descendants, another died in the lifetime of her father, leaving an only child who also died in the lifetime of the father, leaving no issue, and the other died in 1874 leaving four daughters who were still living. The question was whether those four daughters took the interest which their mother would have taken had she survived the life tenant, or did it all go to the three children of the son who did survive the life tenant? The Court said: "As a general rule, a contingent remainder of inheritance is transmissible to the heirs of the *person* to whom it is limited, if such person chance to die before the contingency happens," referring to *Fearne,* 364. JUDGE MILLER then quoted from 4 *Kent's Com.,* 261, that "it is settled that all contingent estates of inheritance, as well as springing and executory uses, and possibilities coupled with an interest, "*where* the person to take is certain, are transmissible by descent, and are devisable and assignable." The Court referred to the fact that the doctrine was vigor-

ously criticised by Mr. Bingham in his book on descents,
but said it had been recognized by this Court in several
cases by which the Court felt bound, and added: "The rule
by its terms applies where the person to take is certain; that
is, where an individual is named or definitely described as the
party to take when the contingency happens; and of this the
case of *Hambleton* v. *Darrington,* 36 Md. 435, affords an
illustration. Of like character are the other Maryland cases
to which reference has been made. *Snively* v. *Beavens et al,*
1 Md. 208; *Buck* v. *Lantz,* 49 Md. 444." The Court then
put this inquiry: "Now does this rule apply to a case where
there is a limitation by way of contingent remainder to *child-*
*ren* as a class, and where there are those of the class answer-
ing the description, and capable of taking at the time the con-
tingency happens and the estate arises and becomes vested,"
and held that the expression " 'children of the testator's son'
did not include the issue of a child in being at the death of
the testator, but who died before the happening of the con-
tingency." This case therefore clearly recognized the rule
that *where the person to take is certain,* contingent estates of
inheritance, as well as springing and executory uses, etc., are
transmissible by descent, and are devisable and assignable,
and that too in a case in which it was considering a will which
created a contingent remainder with a double aspect—where
there were "two contingent fees not limited to take effect the
one upon or after the other, but the one to take effect to the
entire exclusion of the other, and the falling out of the con-
tingency is to decide which of the two is to take effect." It
further clearly recognized the destinction between a case
where *an individual is named,* or *definitely described* as the
party to take, and one where there is a limitation to *a class,*
and it also demonstrated that *Hambleton* v. *Darrington,* was
not overruled by *Buck* v. *Lantz,* by citing it as an illustration
of the rule above stated, and also citing *Buck* v. *Lantz.*

The case of *Larmour* v. *Rich,* 71 Md. 369, throws no light
on the subject. The Court held that by the terms of that will
the remainder given to the children of the testator's daughter

did not vest until the death of the parent. In *Reid* v. *Walback,* 75 Md. 217, it was again said "Contingent estates of inheritance will pass by descent and·are also devisable," citing *Spence* v. *Robbins,* 6 G. & J. 513, and *Hambleton* v. *Darrington, supra.* Nor does *Garrison* v. *Hill,* 79 Md. 75, affect the question. There, as in *Buck* v. *Lantz,* the will under discussion was that of the life tenant and not of the contingent remainderman. As the remainderman died before the contingency happened, without leaving a will, under the rule above referred to, only such heirs could take as were *in esse* when the contingency happened, and as it happened at the time of the death of the testatrix, of course she was not an heir, and she could not dispose of the remainder by her will. The rule which declares that contingent estates of inheritance will pass by descent and are also devisable (which is again announced in *Garrison* v. *Hill*) means that they are devisable by the contingent remainderman, as we have seen, but of course his will does not take effect on such remainder until the happening of the contingency. If it does happen, and he has willed it, then his devisee takes the interest he would have had if he had been then living. That is clearly the meaning of the cases on the subject.

Great reliance is placed by the appellees on *Lee* v. *O'Donnell,* 95 Md. 538, and it is contended that it overruled *Hambleton* v. *Darrington.* In the first place, it might be said that this Court would not intentionally overrule a case, especially one which would affect title to property, without even mentioning it, but there was not only no such intention, but in our judgment it does not in any way have such effect. After stating the facts fully, and the contention of the widow and administratrix of Louis Courtney O'Donnell, who was one of three grandchildren named by the testator as contingent remaindermen, the Court said: "The obvious answer to this contention is, that according to the clearly expressed intention of the testator, the estate did not vest, or become the property of Louis Courtney O'Donnell, her husband, who died intestate on May 27th, 1885, until

the death of the life tenant, Oliver O'Donnell, who did not die until the 13th of November, 1901." Then after quoting the part of the will which made the trust for the benefit of his grandson, Oliver O'Donnell, during his life, and referring to the provision for the remainder which began by saying: "and from and immediately after the decease of my said grandson, Oliver O'Donnell, in trust," etc., the opinion proceeded: "Here the use of the words 'from and immediately after the death' taken in connection with the other parts of the will fixed the period or point of time with reasonable certainty, at which the estate should vest and become the property of his other grandchildren. The testator plainly states the contingency which shall first happen before the property should take effect and vest in the grandchildren named in the will, and that was the death of Oliver O'Donnell, without issue. The husband of the appellant, Nina O'Donnell, having died in the lifetime of the life tenant before the time fixed for the contingent remainder to vest in him (she) is not therefore entitled to share in the distribution of his property under the 16th article of the will, either in her right as widow or as his administratrix," citing *Larmour* v. *Rich,* 71 Md. 384; *Cox* v. *Handy,* 78 Md. 108; and *Nowland* v. *Welch,* 88 Md. 51. The Court then considered the remaining question, whether the trust created by the will terminated at the death of the life tenant. It is obvious that the opinion was based on the construction of the will, which the Court held showed the intention of the testator to be that the contingent remainderman should not take until after the death of the life tenant — relying on the language quoted above, taken in connection with other parts of the will.

There is another part of the will that strongly sustains the conclusion reached. It is that part which provided that in the event of the death of any of the three grandchildren under twenty-one years of age, and without issue, the "share of him or her or them so dying shall go to and become the property of the survivors or survivor of them absolutely," etc., and in case all three of them died under twenty-one and

without leaving issue, then the will provided that the said
share "shall go to and become the estate and property of all
my other children then living and all the descendants or de-
scendant then living of such of them as may be then dead,"
etc.    It was therefore impossible to tell until the death of
the life tenant who was to take—consequently the person to
take was not certain, and hence the rule as announced in
*Hambleton* v. *Darrington,* and followed in *Demill* v. *Reid,*
and other cases did not apply.    That was sufficient to pre-
vent the widow and administratrix from being entitled to
share in the interest which would have gone to Louis Court-
ney O'Donnell, if he had been living at the death of the life
tenant.        Then again, Louis Courtney O'Donnell did not
make a will and hence, as decided in *Buck* v. *Lantz,* only such
as were his heirs *in esse* at the time of the happening of the
contingency could take.    His daughter, Louisa Courtney
O'Donnell, was his only heir, and, as such, she did take what
her father would have taken if he had survived Oliver O'Don-
nell.

There is certainly nothing in *Reilly* v. *Bristow,* 105 Md.
326, which in any way conflicts with what we have said, or
that can be said to sustain the construction placed on *Lee* v.
*O'Donnell,* by the appellees.    On the contrary, it tends to sus-
tain the position contended for by the appellants, although
it is not necessary now to determine whether it went to the
extent the appellants contend for it.

We have thus at such great length reviewed many of our
own decisions because there seemed to be some misapprehen-
sion as to the law on the subject before us in this State.    Our
conclusions are that *Hambleton* v. *Darrington,* has not been
overruled by this Court, and that Robert A. Fisher took a
transmissible and devisable estate under the will of his father,
*as the person to take was certain,* and there was nothing in
the will of James I. Fisher which indicated his intention that
such interest or right as a contingent remainderman may
have, before the happening of the contingency, should be post-
poned until the death of the life tenant.    It is proper to add

that the whole will is not before us, but we assume that if there had been anything in it affecting the question it would have been inserted in the record.

We will not further discuss authorities outside of the State, but will cite some not already mentioned, which more or less reflect upon the questions before us. 2 *Wash. on Real Prop.* (6th Ed.), section 1557; 2 *Minor's Inst.,* 361; 2 *Williams on Executors,* 888, 889; *Pinbury* v. *Elkin,* 1 P. Williams, 564; *Peck* v. *Parrot,* 1 Ves. Sr. 236; *Robertson* v. *Fleming,* 57 N. C. 387; *Heard* v. *Read,* 169 Mass. 216; *Loring* v. *Arnold,* 15 R. I. 428; *Chess' Appeal,* 87 Pa. St. 362; *Hennessy* v. *Patterson,* 85 N. Y. 91; *Dunn* v. *Sargent,* 101 Mass. 336; and *Collins* v. *Smith,* 105 Ga. 525 (S. C. 31 S. E. Rep. 449). In this last case a number of authorities are cited.

(2) The next question is whether the language used in the will of Robert A. Fisher was sufficient to, and did include, this remainder. After giving to his wife certain household furniture and plate he made this bequest: "I give, devise and bequeath unto my brother, Richard D. Fisher, all the rest and residue of my estate, real, personal and mixed, of which I may die possessed, in trust," etc. That expression was certainly broad enough to include all that he could devise and bequeath, unless the words "of which I may die possessed," so qualify the rest of the clause as to prevent this remainder from passing. There is nothing else in the will, or circumstances surrounding it, which would indicate an intention on the part of the testator to die intestate as to any property he could devise or bequeath, but the contrary is manifested. It was said in *Barnum* v. *Barnum,* 42 Md. 311: "There is always a strong disposition in the Courts to construe a residuary clause so as to prevent an intestacy with regard to any part of the testator's estate, unless there is an apparent intention to the contrary," and the Court referred to Sir William Grant's statement that "it must be a very peculiar case indeed, in which there can at once be a residuary clause and a partial intestacy, unless some part of the residue be not well given." In *Dulany* v. *Middleton,* 72 Md. 76, JUDGE

ALVEY quoted from *Booth* v. *Booth,* 4 Ves. 407, that: "Every intendent is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property." As indicating the extent to which this Court has gone, even when the testator did not know he had the property which was involved, see *Stanard* v. *Barnum,* 51 Md. 451, *Dalrymple* v. *Gamble,* 68 Md. 523 and *Lindsay* v. *Wilson.* 103 Md. 252.

A number of cases reflecting upon the meaning of the term "of which I may die possessed" can be found in the books. In *Thomas* v. *Blair,* 111 La. 678, it was held that the expressions "all my property" and "all the property I possess" were equivalent; in *Brantley* v. *Kee,* 58 N. C. 332, "all the property I now possess" was held to mean all that the testator "owned," and therefore included estates in remainder; in *Loring* v. *Arnold,* 15 R. I. 428, "all interest and estate iin all real estate in Rhode Island" passed a contingent remainder; in *Whitehead* v. *Gibbons,* 10 N. J. Eq. 230, all the rest and residue of my estate, real, personal and mixed, wherever it may be situated or found, that I may die possessed of," etc., held to embrace everything that the testator had a right to dispose of not specifically devised or bequeathed; in *Laughlin* v. *Norcross,* 97 Me. 33, by "all the estate, real, personal and mixed, wherever found, and however situated, whereof I die seized and possessed" it was held that "the testator evidently meant to include all kinds of rights that were transmissible." See also—*Cruger* v. *Heyward,* 2 Des. (S. C.) 422; *Heard* v. *Read,* 169 Mass. 216; *Collins* v. *Smith,* 105 Ga. 525; *Woodman* v. *Woodman,* 89 Me. 128; *Davenport* v. *Coltman,* 9 M. & W. 494; and *Hemingway* v. *Hemingway,* 22 Conn. 472. And in *Reilly* v. *Bristow, supra,* the estates of Annie N. Griffin and Frederick H. Griffin were not only not vested in possession, but such interests as they might have from their father's estate depended entirely upon a contingency which had not yet been determined when that case was heard, but this Court held that their wills would each pass either a third of the whole or a third of the

two-thirds under discussion. Frederick's will was: "I devise and bequeath my estate, real and personal," but his sister's was: "I give, devise and bequeath all of my property of whatever kind I am possessed, real, personal or mixed," and whether their father died intestate as to any part of the remainder depended upon the contingency whether his three children left children.

We are, then, of the opinion that the expression "of which I may die possessed" did not limit the broad language of the testator used in that clause. Nor do we think that the rest of the will indicates an intention not to include such an interest as this. Several years before his death the testator had reason to believe that he would get the benefit of Mrs. Green's share, as he was presumably familiar with the terms of his father's will, and as he was making provisions for his wife and any child or children that he might leave, there is every reason to believe he intended to include everything he could dispose of by will. The mere authority given the trustee to "invest" his property, with power to change said investments, cannot be held to mean that he intended to exclude this remainder, because that could not in its then condition be invested by the trustee. The trust might have lasted years after the contingency happened.

We will reverse the decree, but will order the costs above and below to be paid out of the fund, as both sides have requested that to be done, whatever our conclusion might be.

> *Decree reversed, and cause remanded in order that a decree may be passed in accordance with this opinion, the costs, above and below, to be paid out of the fund remaining in the hands of the Safe Deposit and Trust Company of Baltimore, substituted Trustee.*