## JAMES P. McCLURG
### vs.
## ALEXIUS J. MYERS.

*Wills: construction; contingent estates; time of vesting.*

A. M. M. made a conveyance of all his interest in his father's estate to his brother, A. J. M., in trust for certain purposes during the trustor's life, and, after other provisions, declared, "and from and immediately after the death of A. M. M., in trust, one-half part shall pass to * * * any lawful child or children, grandchild or grandchildren" he might leave, and one-half to A. J. M., his heirs and assigns; but if the said A. M. M. "shall die without leaving any child or children or grandchild or grandchildren at the time of his death, then and in that event the whole of the said estate is to pass to and become the absolute property and estate of the said A. J. M., his heirs, executors, representatives and assigns." A. J. M. died in 1894, leaving a widow and three children, and by his will left all his estate then in possession, in expectancy or in reversion to his widow, with the right to dispose of the same by will among his children and grandchildren as she might deem right; the widow of A. J. M. died in 1903, leaving a will in which she exercised the power given her by the will of her husband, and bequeathed his property and estate so as to give two of his children, A. J. M. and J. S. F., equitable life estates therein, with remainders to certain grandchildren of A. J. M. A. M. M., the grantor in the deed of trust, died in March, 1915, without leaving any child or children or grandchild or grandchildren, and the only heirs at law of A. J. M. then living were his three children, A. J. M., J. S. F. and C. H. M. *Held,* that upon the death of A. M. M., as aforesaid, without children, etc., the property passed under the will of his brother, A. J. M., and the will of J. A. M., A. J. M.'s wife, and did not desend to the heirs at law of A. J. M.                    p. 122

*Decided June 23rd, 1916.*

Contingent estates of inheritance, where the person to take is certain, are transmissible by descent, and may be devised or assigned.           p. 121

Appeal from the Circuit Court of Baltimore City. (DAW-KINS, J.)

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-STABLE, JJ.

*Edwin W. Wells* filed a brief for the appellant.

*Edward L. Ward* filed a brief for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 30th of January, 1891, Ambrose M. Myers of Baltimore City executed a deed by which he conveyed all his interest and estate in the estate of his father, Charles Myers, deceased, consisting of an undivided one-third interest therein to his brother Alexius Joseph Myers of Baltimore City in trust to collect and receive all the income therefrom and after paying all taxes, etc., to pay the net income to the grantor during his life, "and from and immediately after the death of the said Ambrose M. Myers in trust, that the one-half part of said estate shall pass to and become the absolute estate and property of any lawful child or children or grandchild or grandchildren that the said Ambrose M. Myers may leave him surviving to take *per stirpes* and not *per capita,* and the other one-half part thereof shall pass to and become the absolute estate and property of the said Alexius Joseph Myers, his heirs, executors, administrators and assigns absolutely, but in case the said Ambrose M. Myers shall die without leaving any child or children or grandchild or grandchildren lawfully begotten at the time of his death, then and in that event that the whole of said estate and property shall pass to and become the absolute estate and property

of the said Alexius Joseph Myers, his heirs, executors, administrators and assigns absolutely." `

Alexius Joseph Myers died in 1894, leaving a widow, Julia Ann Myers, and three children, namely, Alexius J. Myers, Julia S. Frary and Charles H. Myers, and leaving a last will and testament by which, after providing for the payment of his debts and funeral expenses, he devised and bequeathed all the rest and residue of his estate, "whether in possession, remainder or reversion, or in expectancy," to his wife during her natural life, with power to her to dispose of his property by last will and testament, "to such of my children and grandchildren, or either, and their descendants, as she shall therein name and appoint, and that upon such uses and trust and with such limitations and appointments as well in reference to the principal estate as in reference to the income arising therefrom as she may consider right and proper to make, constitute and appoint." Julia Ann Myers died in 1903, leaving a last will and testament in which she exercised the power given her by the will of her husband, Alexius Joseph Myers, and so bequeathed and devised his said property and estate as to give his children, Alexius J. Myers and Julia S. Frary, equitable life estates therein only, with remainders to certain grandchildren of Alexius Joseph Myers.

Ambrose M. Myers, the grantor in the deed of trust, died in March, 1915, "without leaving any child or children or grandchild or grandchildren," and the only heirs at law of Alexius Joseph Myers then living were the said Alexius J. Myers, Julia S. Frary and Charles Henry Myers. On the 28th of December, 1915, Alexius J. Myers entered into an agreement with James P. McClurg to convey to him in fee simple an undivided one-third interest in the property known as 1055 Argyle avenue, in Baltimore City, to which he claimed title as one of the heirs at law of Alexius Joseph Myers under the deed of trust from Ambrose M. Myers. James P. McClurg refused to take the property on the ground that Alexius J. Myers could not give him a good title

to it and Alexius J. Myers filed a bill of complaint against him in the Circuit Court of Baltimore City for specific performance of the agreement.

The contention of the defendant in the lower Court was that the estate conveyed to Alexius Joseph Myers by the deed of trust passed under his will and the will of his wife, and that the plaintiff only had a "life interest in the property," while the plaintiff contended and the learned Court below took the view that as Alexius Joseph Myers died before Ambrose M. Myers and was not living at the time appointed by the deed for the vesting of the estate in remainder, the estate, upon the death of Ambrose M. Myers, vested absolutely in the plaintiff and the other two children and heirs at law of Alexius Joseph Myers then living.

This appeal is from the decree of the Court below requiring performance of the contract of sale and the appellee in this Court relies upon the cases of *Larmour* v. *Rich,* 71 Md. 369; *Cherbonnier* v. *Goodwin,* 79 Md. 55; *Garrison* v. *Hill,* 79 Md. 75 and *Poultney* v. *Tiffany,* 112 Md. 630. In *Larmour* v. *Rich,* Jacob Myers on the 15th of February, 1840, assigned to trustees certain leasehold property, reserving to himself a life estate therein. The deed provided that upon his death his daughter, Rebecca A. Miller, should, "as to one moiety of the property, be permitted" to take the rents, etc., during her life, "and from and immediately after" her death, "then in trust that the said undivided moiety or equal half part of and in said ground and premises shall descend to and become the property of the children the said Rebecca A. Miller now hath, and the child or children she may hereafter have, their executors, administrators and assigns, as tenants in common, equally, the issue of any deceased child of the said Rebecca A. Miller, if any such issue there should be, to take and have the part, share or proportion only to which the parent of such issue would, if living, be entitled; and in the event of the decease of any of the children of the said Rebecca A. Miller under age and without issue, the part, share or proportion of him, her or them so dying, shall de-

scend to and become the property of the survivors or sur-
vivor of them; but in case the said Rebecca A. Miller shall
depart this life without leaving a child or children, or de-
scendants of the same, living at the time of her death, or in
case she should leave a child or children, or descendants
thereof, living at her decease, and such child or children and
descendants should subsequently depart this life under law-
ful age and without issue, then to the use, benefit and behoof
of the right heirs of the said Jacob Myers and their assigns
absolutely." The grantor had previously made a similar
provision for his said daughter and her children, etc., by his
will. Mr. Myers died in 1847, and Mrs. Miller died in
1888, leaving a number of children. She had one other
daughter, Louisa K., who married John W. Larmour in
1867 and died a few weeks afterwards, and the question in
the case was, did John W. Larmour, by reason of his being
the surviving husband of Louisa K. Miller, have any interest
in the property and estate disposed of by the clause we have
quoted from the deed of trust? In disposing of that ques-
tion JUDGE McSHERRY said: "From and immediately after
her decease he directed that the property itself should then
'descend to and become the property of the children, the said
Rebecca now hath, and the child or children she may here-
after have,' 'the issue of any deceased child, * * * to take
and have the part' 'to which the parent of such issue would
if living be entitled.' 'If living' clearly means, if living at
the time of Mrs. Miller's death. * * * The whole controversy
resolves itself into a single inquiry, whether the equitable
estates in remainder were vested or contingent remainders?
And whether they were the one or the other depends largely
upon what Jacob Myers intended them to be. Had no future
period been fixed by him with reasonable certainty, the law
itself would have treated the remainders as having vested
upon the execution and delivery of the deed and the death
of the testator respectively; and the case would then have
been one of the class to which Crisp v. Crisp, 61 Md. 149,
and the others first cited belong. But a future period hav-

ing been fixed and the time of its occurrence having been uncertain until the death of Mrs. Miller, the remainders were clearly alternative contingent remainders, or contingent remainders with a double aspect, as they are sometimes called; and so the case comes within the class of which those last noted belong. These remainders never vested in Louisa K. Miller, the wife of Mr. Larmour, because she died in the lifetime of her mother, before the period fixed for the remainders to vest. Necessarily, therefore, her husband acquired no interest therein and the decree of the Circuit Court is, in our judgment, entirely correct and must be affirmed." In that case the Court was dealing with limitations of remainders to the children of Mrs. Miller *as a class,* and as the will and deed postponed the vesting of the estates until the happening of the contingency upon which they were dependent, they were contingent estates, which, upon the happening of the contingency, vested only in those answering the description of the class named. In other words, the testator and grantor having *described* those who were to take, and having fixed the *time* when that *description* was to be applied, which he had a right to do, those who came within that description at the *appointed time* took by purchase under the will and deed. *Turner* v. *Withers,* 23 Md. 18, and *Demill* v. *Reid,* 71 Md. 175.

In *Garrison* v. *Hill,* where a contingent remainder of inheritance was given to one who died before the happening of the contingency, the Court held that the estate went to those who were his heirs *at the time the contingency happened,* JUDGE BRISCOE saying: "JUSTICE STORY, in *Barnitz* v. *Casey,* 7 Cranch, 456, states the rule thus: 'It is very clear that contingent remainders and executory devises at common law are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens.' It was held in that case that those who were heirs of the remainderman on the 12th of February, 1808, the date of the happening of the contingency, were

entitled to the estate, though he had died in 1802, six years before the contingency happened."

In *Cherbonnier* v. *Goodwin,* the testatrix gave to a trustee $1500.00 in trust to expend the income therefrom for the support, etc., of her son, Edward Goodwin, during his natural life, and the will provided that "from and immediately after the death of the said Edward Goodwin, then I will and direct that the said fifteen hundred dollars be equally divided among all the children which said Edward Goodwin may hereafter have; and in case the said Edward Goodwin should die without leaving such child or children, then the said $1500.00 shall be equally divided between my grandchildren, William Henry Goodwin, Charles Edward Goodwin and Francis Colgate Goodwin, and the survivors of them." Edward Goodwin had two children, Eliza J. and Alexander Goodwin. Alexander died before his father, and it was claimed that he had a vested remainder in one-half of the $1500.00 which devolved upon his personal representatives, but Judge Briscoe, speaking for the Court, said: "The testator has the right to fix the period of vesting to suit his wishes. He can postpone the period and make the vesting depend upon a contingency, and if he does, with reasonable certainty, the estate will not vest until the happening of this contingency. And whether the testator intended to give a vested estate or to make it depend upon a future contingency, depends in a great measure upon the language and phraseology of the will itself. This doctrine is fully laid down and applied in *Bailey* v. *Love,* 67 Md. 598, and *Larmour* v. *Rich,* 71 Md. 384, and cases there cited. These cases are decisive of the question raised here. The remainder, therefore, never vested in Alexander, the son of Edward Goodwin, because he died in the lifetime of his father, before the period fixed by the testatrix for the remainder to vest. The words 'from and after' the death of Edward Goodwin in connection with the limitation over to the grandchildren of the testatrix clearly indicate that it was the intention of the testatrix to postpone the vesting of the legacy until

after the death of Edward Goodwin. The appellee then having been born after the execution of the will and having survived the life tenant, Edward, is clearly entitled to the whole legacy."

In *Poultney* v. *Tiffany,* the Court was construing the will of Thomas Poultney, Jr., by which he gave all of his property after payment of his debts, etc., to his brother, in trust to pay the net proceeds thereof to his wife during her life, "and in further trust that from and immediately after the death of my wife this trust shall cease and the property shall then become the property of my children, in equal shares and portions, and their respective heirs, executors, administrators and assigns, the child or children of any deceased child in all cases to take the share of the parent." Judge Pearce said that the sole question in that case was: "When did the estate devised by Mr. Poultney to his children vest in interest?" After quoting from *Larmour* v. *Rich, supra,* the Court held that the remainders were contingent remainders and did not vest until the death of Mrs. Poultney.

It is obvious, we think, that these cases do not answer the question presented by the case at bar. There is no question here as to the *kind of estate* conveyed to Alexius Joseph Myers by the provision of the deed, "in case the said Ambrose M. Myers shall die without leaving any child or children, etc., * * * then and in that event the whole of said estate and property shall pass to and become the absolute estate and property of the said Alexius Joseph Myers, his heirs," etc. It was a contingent remainder of inheritance, not to a *described class* but to a certain named person who was to take if and when the contingency happened. The decisions in this State have consistently and uniformly held that such estates are transmissible by descent, and are devisable and assignable. *Snively* v. *Beavens,* 1 Md. 208; *Hambleton* v. *Darrington,* 36 Md. 434; *Buck* v. *Lantz,* 49 Md. 439; *Demill* v. *Reid, supra; Garrison* v. *Hill, supra; Fisher* v. *Wagner,* 109 Md. 243; *Jenkins* v. *Bonsal,* 116 Md. 629.

In *Hambleton* v. *Darrington, supra,*. the Court, quoting from the authorities cited, said: " 'All estates which are transmissible, either by operation of law or by act of the party, are held devisable. This, it has been long held, extends to a possibility, if it is. not a mere naked expectancy, but be coupled with an interest.' *1 Redfield on Wills*, 388, 389; *Ferne on Rem.*, 371. 'All contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, when the person to take is certain, are transmissible by descent, and are devisable.' 4 *Kent*, 261. 'Where the testator bequeathes his personal estate to A, and if he shall die without issue to B, there is such a vested interest in B, if he survive the testator, that although he should die in the lifetime of A, the estate will pass under a devise from him, or will go to his personal representatives, in the event of A dying without issue.' *Barnes* v. *Allen*, 1 Bro. Ch. 181; *Perry* v. *Woods*, 3 Ves. 204, 208; 2 *Redfield on Wills*, 627."

In *Demill* v. *Reid, supra*, JUDGE MILLER said: "As a general rule a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chances to die before the contingency happens. *Ferne*, 364. CHANCELLOR KENT states the rule thus: 'It is settled that all contingent estates of inheritance, as well as springing and executory uses, and possibilities coupled with an interest where the person to take is certain, are transmissible by descent and are devisable and assignable.' 4 *Kent*, 262. This doctrine is vigorously critisized by Mr. Bingham in his book on *Descent* (sec. 6), but it has been recognized by this Court in several cases, and we are of course bound by those decisions. The rule by its terms applies where the person to take is certain, that is, where an individual is named or definitely described as the party to take when the contingency happens; and of this the case of *Hambleton* v. *Darrington*, 36 Md. 435, affords an illustration. Of like character are the other Maryland cases to which reference has been made."

In *Fisher* v. *Wagner, supra,* where the contingent remain-derman died before the happening of the contingency leaving a will, the Court held that the estate limited to him passed under his will. CHIEF JUDGE BOYD, after carefully reviewing the previous decisions of this Court, reached the conclusion that *Hambleton* v. *Darrington, supra,* had not been overruled, and referring to the case of *Demill* v. *Reid, supra,* said: "This case therefore clearly recognizes the rule that *where the person to take is certain,* contingent estates of inheritance, as well as springing and executory uses, etc., are transmissible by descent, and are devisable and assignable. * * * It further clearly recognizes the distinction between a case where *an individual* is named, or *definitely described* as the party to take, and one where there is a limitation to a class." He also said: "Our testamentary laws provide that any lands, etc., which can be conveyed or descend to or devolve upon heirs or other representatives, and all personal property which might pass by deed, etc., can be disposed of by will, and hence it might be argued from them that an estate which is transmissible is devisable."

The words "from and immediately after the death of Ambrose M. Myers" in the deed, had reference to and fixed the time for the vesting of the "absolute" estate in fee. The *interest* Alexius Joseph Myers acquired by virtue of his *right* to the enjoyment of the estate in fee in the event named, vested in him upon the execution and delivery of the deed (*Hambleton* v. *Darrington, supra; Fisher* v. *Wagner, supra*), and if he had died intestate, the estate would, upon the happening of the contingency, have descended to and vested in *his* heirs then in *esse. Buck* v. *Lantz, supra; Garrison* v. *Hill, supra; Jenkins* v. *Bonsal, supra.* The rule which requires the heirs who are to take to be ascertained at the time the contingency happens and the estate falls into possession, is said "to be adopted in analogy to the rule of descent which requires that a person who claims a fee simple by descent from one who was the first purchaser of the reversion or remainder expectant on a freehold estate must make himself

heir of such purchaser *at the time* when that reversion or remainder falls into possession." *Buck* v. *Lantz, supra.*

In the grant to Alexius Joseph Myers, his heirs, etc., upon the happening of the contingency, the word "heirs, executors," etc., are not words of purchase, but words of limitation, expressing the intention of the grantor to convey to Alexius Joseph Myers a fee simple estate, and the contention of the appellee is therefore rather contradictory and illogical. He asserts title to an undivided one-third interest in the property as one of the heirs at law of Alexius Joseph Myers, and at the same time contends that the person through whom he claims, and must claim, did not have such an interest or estate as was devisable. If it was not devisable it was clearly not transmissible by descent, and if it was not transmissible by descent the appellee could not take as the heir of the contingent remainderman.

It follows from what we have said that the property in question did not, upon the death of Ambrose M. Myers, without children, etc., descend to the heirs at law of Alexius Joseph Myers, but passed under his will and the will of his wife, Julia Ann Myers, and we must therefore reverse the decree of the Court below.

*Decree reversed, with costs and bill dismissed.*