THOMAS A. CULVER v. RUTH C. CULVER,
Personal Representative of the
Estate of Robert L. Culver

[No. 484, September Term, 1980.]

*Decided February 4, 1981.*

The cause was argued before Gilbert, C. J., and Liss and Wilner, JJ.

*Dirk W. Widdowson* and *Robin R. Cockey,* with whom were *Fulton P. Jeffers* and *Hearne & Bailey, P.A.* on the brief, for appellant.

*Hobart B. Hughes,* with whom were *Long, Laws, Hughes & Bahen* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

An experienced legal practitioner once commented, "Where there's a will, there are relatives." The accuracy of that observation is illustrated by the facts of this case.

Clifford W. Culver (Clifford) executed his last will and testament in 1960 and died on April 16, 1963. By the terms of his will he disposed of a portion of his property in the following manner:

> THIRD: I give and devise all of the real estate that I may own at the time of my death unto my wife, Willa T. Culver, for and during the term of her natural life and upon her death I give and devise the same unto my two (2) brothers, Thomas and Robert, or the survivor of them, but if they should predecease me then, and in that event, I give and devise said real estate unto the male descendants of Thomas and Robert, my brothers, per stirpes and not per capita, in fee simple, absolutely.

Item four of his will provided for the disposition of the rest and residue of his property as follows:

> FOURTH: All of the rest, residue and remainder of my property of which I may die possessed, of whatever nature and wheresoever situate to which I may be entitled or of which I may have power by appointment or otherwise by any deed, Will or other instrument to dispose of at my decease, I give, devise and bequeath unto my wife, Willa T. Culver, absolutely, and in fee simple, provided she survives me; but if my said wife should predecease me or in the event my said wife and I shall perish in a

common accident, disaster or catastrophe, or under such circumstances that it is impossible, or there is no sufficient proof, to determine which of us died first, then, and in any such event, I give, devise and bequeath said rest, residue and remainder to those who would be entitled to same had I died intestacy [sic] under the Laws of the State of Maryland.

The real property devised by Clifford's will consisted of two parcels of farmland located in Wicomico County, Maryland.

Clifford's brother, Robert, died on October 7, 1978. Robert left a last will and testament by which he devised his property to his wife Ruth C. Culver. Ruth C. Culver (Ruth), as personal representative of her husband's estate, is the appellee in this case.

Willa, the life tenant under Clifford's will, died on August 16, 1979 some nine months after the death of Robert.

On June 15, 1979, Ruth, as personal representative of Robert's estate, filed a bill for declaratory judgment in the Circuit Court for Wicomico County. By her bill of complaint she sought a declaratory judgment that the effect of the third item of Clifford's will was to vest a remainder interest in Clifford's brothers, Robert and Thomas, subject to the life estate of Clifford's widow, Willa. Ruth also sought to have a declaratory ruling that the remainders vested in Thomas and Robert as of the date of Clifford's death, and further, that Robert's vested remainder passed to Ruth under the residuary clause of Robert's will at the death of the life tenant.

Thomas A. Culver (Thomas), the appellant, answered Ruth's bill for declaratory relief and motion for summary judgment by which he contended that the survivorship clause of item third of Clifford's will must be read as taking effect as of the date of Willa's death; and that as Robert predeceased the life tenant, Willa, Robert's interest was a contingent remainder which terminated at Robert's death prior to the death of the life tenant.

The trial judge held a hearing on the motion for summary judgment and denied the motion. The matter then came on

for hearing on the merits. The record discloses that at the time of Clifford's death he owned a 128.15 acre parcel of land on Jersey Road in Wicomico County, Maryland which had been conveyed to him by his father, L. Gordy Culver in 1952. Also at the time of his death, Clifford owned a one-third interest in a 68 acre parcel of land located on Pemberton Drive just outside the city limits of Salisbury, Maryland. L. Gordy Culver, the father of Clifford, Robert, and Thomas, had originally owned the Pemberton farmland and approximately 400 acres of farmland on Jersey Road. In 1952, the father divided the Jersey Road farmland by conveying nearly equal parcels to his three sons. At the father's death, he still owned the Pemberton farmland, and by the father's last will and testament he devised that property in equal shares to Clifford, Robert and Thomas.

The father and his three sons were lifelong farmers, and prior to the death of the father, a farming corporation was formed which operated the property as farmland. When Clifford died without issue, he left surviving him his widow Willa, and his brothers Robert and Thomas. After Clifford's death his parcels were leased to the corporation at a rental of $10 per acre, and all the income from Clifford's parcels was paid to Willa.

After holding the case *sub curia,* the trial judge declared that the remainder was to a designated person contingent as to the occurrence of an event, but whether Robert was determined to a vested remainderman or a contingent remainderman was unimportant as the result would be the same (*i.e.,* that Thomas and Robert or Robert's heirs were entitled to share the property here involved). In handing down its ruling the lower court held "that the intention of the testator must govern when such intention can be ascertained from the will." The court went on to state that it "does not believe that Clifford intended the family of Thomas to inherit the property to the exclusion of the family of Robert." It is from that judgment that this appeal was taken.

The issues to be decided by this appeal are:

I. Whether the language of item third of Clifford W. Culver's will created a contingent remainder or, in the alter-

native, a vested remainder, and at what time did such estate vest?

II. Assuming, *arguendo,* that the remainder interest created by item third of Clifford W. Culver's will was contingent, was it still devisable by Robert's will?

I.

Appellant urges that the language of item third of Clifford Culver's will created a contingent remainder in Robert L. and Thomas R. Culver that vested at the termination of the intervening life estate.

At 28 Am. Jur. 2d *Estates* Section 266 (1966), it is stated that:

> The vested or contingent character of a remainder to survivors frequently depends upon whether the survivorship relates to the death of the testator or grantor or to some other period. Obviously, if words of survivorship relate to the period of distribution, generally the death of the life tenant, the remainder is contingent, since who will survive such time in order to take the remainder is uncertain until the time of the life tenant's death or other event. Survivorship is then a condition precedent to the vesting of the gift, and a remainder subject to a condition precedent is contingent. If the words of survivorship are held to refer to the time of the grant or of the death of the testator, or, in other words, to the time when the deed or will takes effect, the remainder may be vested, either absolutely or defeasibly . . . . [Footnote omitted.]

Barring sufficient evidence of a contrary testamentary intent, an estate or interest will be held to vest as early as possible. *Larmour v. Rich,* 71 Md. 369, 18 A. 702 (1889). The controlling factor, however, is always testamentary intent.

Thus, it is stated in *Pocock v. Gladden,* 154 Md. 249, 256, 140 A.2d 208 (1928) that:

> [I]f the intention of the testator to have the estate vested at a particular time is apparent from the whole will, that construction will be adopted which gives effect to the intention of the testator, even though it violates the rule favoring the early vesting.

In discerning the intention of the testator in regard to his use of words of survivorship, the courts over the years have availed themselves of two different (and competing) rules of construction:

> The rule ... applied in the early English decisions and still adhered to in a few jurisdictions in this country, [is] that words of survivorship in a testamentary gift of a remainder after a life or other intervening estate are referable to the death of the testator, in the absence of any sufficient indication of a contrary intention ...

> The rule ... in the later English cases and in the greater number of American jurisdictions, [is] that words of survivorship in a testamentary gift of a remainder after a life or other intervening estate are referable to the termination of the intervening estate, in the absence of any sufficient indication of a contrary intention. ... [20 A.L.R.2d 830, at 833 (1951).]

At 28 Am. Jur. 2d *Estates* Sections 267 and 268 (1966), an almost identical statement of the two rules is given, along with the assessment that the rule referring survivorship language to the time of life tenant's death represents the majority view:

> *Subject always to the cardinal rule of construction that the intention of the testator, if clearly ascertainable from the language of the will, must control,* the earlier English rule that where a remainder is given to survivors of a class, survivorship is to be determined as of the time of the testator's death, has been adopted by some

courts in the United States. [Emphasis supplied.] [Footnote omitted.]

* * *

In the later English cases and in the greater number of American jurisdictions, the presumption is that words of survivorship refer to the period of distribution of the estate in remainder unless a special intention to the contrary is expressed by the language of the will. [Footnote omitted.]

Miller, in his treatise on wills, discusses the rules for construing survivorship language in a will, and offers the following account of their historical development:

In the earlier English cases, where the gift was after a prior estate, the courts uniformly held that words of survivorship in wills of both real and personal estate referred to the death of the testator; so that such a gift to several persons as tenants in common, and the survivors and survivor of them, vested the subject of gift absolutely in the persons living at the death of the testator, the words of survivorship being referable to that period. But in the later English cases, where there is a gift to a person for life, or any other limited interest, and after the termination of such interest to certain persons by name, or to a class of persons as tenants in common, "and the survivors of them", the rule is to refer the words of survivorship to the period of distribution, or to the termination of the intermediate estate; that is to say, the legatees surviving at that time take to the exclusion of the personal representatives of such as may have died before that period.

In this country the weight of authority at one time seemed to be in favor of the earlier rule which refers the words of survivorship where the gift was not immediate, to the death of the testator, and this too without recognizing any distinction between real and personal estate. This accords with the settled

rule of construction in favor of the early vesting of legacies, and is consistent with the policy of the law which opposes joint tenancy, with its distinctive feature of the right of survivorship. In recent Maryland cases, however, it is said as a rule of general application, that when a gift is made for life, or years, or for any other particular estate, and then over to survivors, the period of survivorship is generally to be referred to the period of distribution or the termination of the particular estate, and not to the death of the testator; *subject of course to the intention.* (Emphasis supplied.) When the will simply creates a life estate in one person and makes a gift over at its expiration to several persons or the survivor or survivors of them, the survivorship refers to the period of distribution, unless the facts or the context of the will withdraw the gift from the operation of the rule. [Miller, *Construction of Wills in Maryland* Section 274 (1927).] [Footnotes omitted.]

Appellee, on the other hand, contends that the rule favoring the earliest possible vesting of estates, in the absence of a clear intention to the contrary, favors the vesting of estates whether remainder or otherwise at the time of the death of the testator. As Miller states in Section 227 of his treatise on wills, *supra:*

The most important of the settled rules of construction in reference to the question as to when an estate, whether in remainder or otherwise, shall vest, and indeed the only rule which is general, definite and fixed, is that the law favors the earliest vesting of estates. It favors the vesting at the earliest moment that is consistent with the apparent intention of the testator or the general scheme of his will. Therefore, in the absence of a clear intention to the contrary, it favors the vesting at the time of the death of the testator, because every postponement of the vesting renders it

contingent and uncertain, at least as to the person
who is to take. [Footnotes omitted.]

The Court of Appeals has followed the rule of construction
favoring the early vesting of estates, unless there is lan-
guage in the will postponing the vesting. *See Johnson v.
Swann*, 211 Md. 207, 126 A.2d 603 (1956); *Robinson v. Mer-
cantile Trust Co. of Balto.*, 180 Md. 336, 24 A.2d 299 (1956);
*Nicodemus National Bank v. Snyder*, 178 Md. 140, 12 A.2d
518 (1940); *Wilson v. Pichon,* 162 Md. 199, 159 A. 766 (1939);
*Grace v. Thompson,* 169 Md. 653, 182 A. 573 (1936).

The question here to be decided is what was the testa-
mentary intent of Clifford Culver. From our analysis of
items three and four of the will, we have no difficulty in
reaching what we think is the accurate determination of the
testator's intention. Item three, in our opinion, provides for
the occurrence of two contingencies which must be con-
sidered together. First, what is to occur in the event one of
the brothers dies before the testator; and second, what is to
occur if both brothers die before the testator? The latter
clause clearly refers to what is to happen if both brothers
"predecease *me*" (emphasis supplied), and unambiguously
expresses an intention that under that circumstance the real
estate shall devolve to "the male descendants of Thomas and
Robert, my brothers, per stirpes and not per capita in fee
simple, absolutely." To accept appellant's interpretation of
the first portion of item three as referring to Willa's death
would leave an unexplainable gap in the testator's expressed
intention. This would require us to find that in the event
both brothers predeceased the life tenant that the testator
intended the property to go to his wife or her heirs under the
rest and residue clause of his will, as reflected in item four.
This would, in our opinion, disenfranchise the male
descendants of Thomas and Robert and give to Willa and her
heirs more than the testator ever intended. It seems clear
that Clifford intended to provide an income for the support
and maintenance of his wife so long as she might live and at
her death to have the property descend to his brothers or
their male descendants if the brothers had deceased. This
intention carried out the plan evidenced by the actions of

Clifford's father that indicated the property was to remain in the family and was to be farmed by the three brothers. We conclude that the remainder devised to the brothers vested as of the time of the testator's death.

## II.

Concluding, as we do, that the brothers had a vested remainder subject to the widow's life estate, it is well settled in Maryland that a vested remainder interest is freely alienable, devisable and descendible. Professor Russell Reno in an article entitled "Alienability and Transmissibility of Future Interests in Maryland," 15 Md. L. Rev. 193, 210 (1955), said:

> Where the future interest is created in a designated person or persons either by name or description, so that the takers are fully ascertained at the death of the testator, the Court of Appeals has repeatedly refused to imply survival until the time of vesting and possession as a condition precedent. Clearly if the interest is otherwise vested it would be contrary to policy to imply a condition precedent of survival, thus making the interest contingent. But even where the interest is otherwise contingent, because it depends upon the happening of another event as in the case of executory interests, the Court has refused to imply a condition precedent of survival in the absence of some wording in the instrument showing such an intent. Thus the fact that a gift to a designated person is contingent upon an event in no way connected with the continued life of the taker does not render the contingent estate non-transmissible by the death of the taker before the estate has vested in interest. In other words, the fact that a gift to a designated person is still a mere possibility of an estate and not a certainty at his death does not destroy its transmissible character by intestate succession or testamentary disposition.

*See Simon v. Safe Deposit & Trust Co.,* 190 Md. 468, 59 A.2d 199 (1948).

In *Hammond v. Piper,* 185 Md. 314, 319, 44 A.2d 756 (1945), the Court of Appeals said: "Where the remaindermen are ascertained, although there is a contingency as to an event, such as the death of [the life tenant] without leaving children or descendants, such remainders are both descendible and devisable." In *McClurg v. Myers,* 129 Md. 112, 120, 98 A. 491 (1916), the Court, quoting from *Demill v. Reid,* 71 Md. 175, 17 A. 1014 (1889), stated the general rule as follows:

> [A] contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chances to die before the contingency happens. The rule by its terms applies where the person to take is certain, that is, where an individual is named or definitely described as a party to take when the contingency happens.

We find that Robert's vested remainder interest in this property passed by reason of his last will and testament to his personal representative and wife, Ruth, upon the death of the life tenant, Willa. We, therefore, find no error in the judgment below.

*Judgment affirmed; costs to be paid by appellant.*